# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## COLUMBIA DIVISION

PATTI M. COLE, )
)
    Plaintiff, )
)
v. )    No. 1:13-cv-00052
)    Senior Judge Haynes
)
SAMUEL BARNES, et al., )
)
    Defendants. )

## MEMORANDUM

Plaintiff, Patti Cole, filed this action under 42 U.S.C. § 1983 against Defendants Samuel

Barnes, in his individual capacity, Enoch George, individually and in his official capacity, and Maury

County.[1] Plaintiff alleges that her arrest for disorderly conduct lacked probable cause and was in

retaliation for engaging in constitutionally protected speech, constituting a violation of her First and

Fourth Amendment rights under the United States Constitution. Plaintiff also alleges that Maury

County maintained a policy or custom that caused the alleged violation of Plaintiff's rights.

Before the Court is Defendants Barnes, George, and Maury County's ("Defendants") motion

for summary judgment (Docket Entry No. 48), contending that: (1) Defendants Barnes and George

are entitled to qualified immunity on Plaintiff's First and Fourth Amendment claims because the

Sheriff's Department had probable cause, in the form of an arrest warrant, to arrest Plaintiff and her

speech was not protected under the First Amendment; (2) Plaintiff's claims against Defendant

George in his official capacity are redundant in light of Plaintiff's claims against Maury County; (3)

---

[1]Plaintiff's Complaint (Docket Entry No. 1) also named as Defendants Edward Hickman and
the Maury County Board of Education. Pursuant to the parties' joint stipulation of dismissal,
Plaintiff's claims against these Defendants were dismissed on September 29, 2014. (Docket Entry
No. 47).

Plaintiff has not produced any evidence of an unconstitutional policy, practice or custom of Maury County; and (4) Maury County cannot be held liable under § 1983 for any alleged conduct of the Maury County Board of Education. Plaintiff filed a response in opposition (Docket Entry No. 55), conceding that Maury County cannot be held liable for the conduct of the Maury County Board of Education, but contending that the arrest warrant is not sufficient to entitle Defendants Barnes and George to qualified immunity and that her speech is protected under the First Amendment. Plaintiff also contends that genuine issues of material fact as to whether Maury County maintained a policy or custom that caused the alleged violation of Plaintiff's rights, preclude summary judgment. Defendants filed a reply. (Docket Entry No. 60).

For the reasons stated herein, the Court concludes that Defendants Barnes and George are not entitled to qualified immunity on Plaintiff's First and Fourth Amendment claims and that Plaintiff's speech is protected under the First Amendment. Yet, the Court concludes that Plaintiff has not presented any evidence to establish that Defendant George, individually, was actively involved in the alleged violations of Plaintiff's Constitutional rights. The Court also concludes that Plaintiff has failed to create a genuine issue of material fact with respect to her claims against Maury County and Sheriff George in his official capacity. Accordingly, Defendant's motion for summary judgment (Docket Entry No. 48) should be granted in part and denied in part.

## A. Review of the Record[2]

---

[2]Upon a motion for summary judgment, the factual contentions are viewed in the light most favorable to the party opposing the motion for summary judgment. Duchon v. Cajon Co., 791 F.2d 43, 46 (6th Cir. 1986). As discussed infra, upon the filing of a motion for summary judgment, the opposing party must come forth with sufficient evidence to withstand a motion for directed verdict, Anderson v. Liberty Lobby, 477 U.S. 242, 247-52 (1986), particularly where there has been an opportunity for discovery. Celotex Corp. v. Catrett, 477 U.S. 317, 326 (1986). The Court concludes that there are material factual disputes to preclude summary judgment on Plaintiff's First and Fourth

On March 7, 2013, following her daughter's arrest and the search of the residence located at 403 Adams Avenue, Plaintiff called the Maury County Sheriff's Department and spoke with Deputy Rob Wagonschutz. (Docket Entry No. 57, Plaintiff's Response to Defendants' Statement of Undisputed Material Facts at ¶ 1). Plaintiff inquired about getting the keys to her daughter's car and complained about the damage sustained to the residence at 403 Adams Avenue in connection with her daughter's arrest and the subsequent search. Id. at ¶¶ 1, 3.

After conducting a search of the evidence, Wagonschutz advised Plaintiff that the Sheriff's Department did have the keys to the vehicle and made arrangements for Plaintiff to retrieve her daughter's keys at the Sheriff's Department. Id. at ¶ 2.

According to Plaintiff, when Wagonschutz said he found the keys and she proceeded to ask about the damage to her house, the line went dead. Id. at ¶ 4. Plaintiff further contends that, after the line went dead, she called right back but was told that Wagonschutz was not there. Id. at ¶ 5.

On March 12, 2013, Plaintiff displayed a disassembled toilet on the front yard of 403 Adams Avenue. Id. at ¶ 6. Written on the disassembled toilet was "FUCK you Rob Wagonschutz" and "Rob Wagonshutz [sic] Special place in HELL for U and Ur boys!" Id.; see also Docket Entry No. 49-3, Photograph or Toilet.

Plaintiff testified that she decided to write the message because she was angry about the damage that had been done to her home during the arrest of her daughter and the subsequent search of the residence and because she was upset about how she had been treated when she contacted the Sheriff's Department to inquire about the damage to her home and about getting her daughter's car keys. (Docket Entry No. 57, Plaintiff's Response to Defendants' Statement of Undisputed Material

---

Amendment claims.

Facts at ¶¶ 7-8).

Plaintiff testified that, when she wrote "FUCK you Rob Wagonschutz," she was intending to convey that she was very dissatisfied with what Wagonschutz and the Drug Task Force had done to her home and to her as a citizen of Maury County. Id. at ¶ 9. Plaintiff also testified that, when she wrote "Special place in HELL for U and Ur Boys," she meant there is a special place in hell for individuals that break into someone's home, leave a mess, and do not answer for what they have done. Id. at ¶ 10.

Plaintiff further testified that she directed the message specifically to Wagonschutz because of his role in the arrest of Plaintiff's daughter and for his alleged refusal to answer Plaintiff's questions regarding damage to her home. Id. at ¶ 11. Plaintiff testified that she placed the toilet in her front yard because she wanted her message to be seen and she specifically wanted Wagonschutz to see the message. Id. at ¶¶ 12-13.

After seeing the toilet, Wagonschutz called his supervisor, Bill Doelle. Id. at ¶ 15. Wagonschutz felt threatened by the message on the toilet because it was located so close to his home and it was directed at him. Id. at ¶ 16. Wagonschutz did not know if he should expect further vandalism or retribution for arresting Plaintiff's daughter and he did not know if the threat was directed toward him and his family or toward the Drug Task Force. Id.

After contacting his supervisor, Wagonschutz reported the incident to the Sheriff's Department. Id. at ¶ 17. In response, the Maury County Sheriff's Department dispatched Sgt. Barnes to Wagonschutz's residence. Id. When Barnes arrived, he spoke to Wagonschutz, who explained that Plaintiff was upset about the arrest of her daughter and the search of the residence. Id. at ¶¶ 18-19. During this discussion, Wagonschutz called Assistant District Attorney Brent Cooper, who advised

Wagonschutz and Barnes that, based on his reading of the disorderly conduct statute, this incident would qualify as disorderly conduct. Id. at ¶¶ 20, 22. Shortly thereafter, Sheriff George arrived at Wagonschutz's residence. Id. at ¶ 23.

Barnes then drove to Mount Pleasant Middle School to speak with Plaintiff. Id. at ¶ 25. Prior to doing so, Barnes read the disorderly conduct statute to determine the elements of disorderly conduct. Id. at ¶ 24. Plaintiff admitted to Barnes that she placed the toilet in the front yard and stated that she would remove it from her property. Id. at ¶ 26. Barnes advised Plaintiff that she should not remove the toilet because he needed to take photographs and he may need to retrieve the toilet as evidence. Id. at ¶ 27. Barnes and Plaintiff then returned to 403 Adams Avenue. Id. at ¶¶ 28-29. Although Plaintiff proceeded as if she were going to remove the toilet, Barnes instructed her not to remove the toilet and Plaintiff complied. Id. at ¶ 29.

Barnes then obtained an arrest warrant from Magistrate Terry Brewer, who found that there was probable cause to believe that Plaintiff committed the offense of disorderly conduct. Id. at ¶¶ 30-32. Plaintiff was arrested and booked into the Maury County Jail at 11:40 a.m. on March 13, 2013. Id. at ¶ 33. Plaintiff was released later that afternoon. Id. at ¶ 34.

On March 26, 0213, Maury County General Sessions Judge Bobby Sands granted Plaintiff's motion to dismiss the case on "constitutional grounds." Id. at ¶ 35.

## B. Conclusions of Law

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." Advisory Committee Notes on Rule 56, Federal Civil Judicial Procedure and Rules (West Ed. 1989). Moreover, "district courts are widely acknowledged to possess the power to enter summary judgment sua sponte, so long as

the opposing party was on notice that she had to come forward with all of her evidence." Celotex

Corp. v. Catrett, 477 U.S. 317, 326 (1986); accord, Routman v. Automatic Data Processing, Inc., 873

F.2d 970, 971 (6th Cir. 1989).

In Anderson v. Liberty Lobby, Inc., 477 U.S. 242, (1986), the United States Supreme Court

explained the nature of a motion for summary judgment:

> Rule 56(c) of the Federal Rules of Civil Procedure provides that
> summary judgment 'shall be rendered forthwith if the pleadings,
> depositions, answers to interrogatories, and admissions on file,
> together with the affidavits, if any, show that there is no genuine issue
> as to any material fact and that the moving party is entitled to a
> judgment as a matter of law.' By its very terms, this standard provides
> that the mere existence of <u>some</u> alleged factual dispute between the
> parties will not defeat an otherwise properly supported motion for
> summary judgment; the requirement is that there be no <u>genuine</u> issue
> of <u>material</u> fact.
>
> <u>As to materiality, the substantive law will identify which facts are</u>
> <u>material. Only disputes over facts that might affect the outcome of</u>
> <u>the suit under the governing law will properly preclude the entry of</u>
> <u>summary judgment</u>. Factual disputes that are irrelevant or
> unnecessary will not be counted.

477 U.S. at 247-48 (emphasis in the original and added in part). Earlier the Supreme Court defined

a material fact for Rule 56 purposes as "[w]here the record taken as a whole could not lead a rational

trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita

Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citations omitted).

A motion for summary judgment is to be considered after adequate time for discovery.

Celotex, 477 U.S. at 326. Where there has been a reasonable opportunity for discovery, the party

opposing the motion must make an affirmative showing of the need for additional discovery after

the filing of a motion for summary judgment. Emmons v. McLaughlin, 874 F.2d 351, 355-57 (6th

Cir. 1989). But see Routman, 873 F.2d at 971 (6th Cir. 1989).

There is a certain framework in considering a summary judgment motion as to the required

showing of the respective parties as described by the Court in Celotex:

> Of course, a party seeking summary judgment always bears the initial
> responsibility of informing the district court of the basis for its
> motion, and identifying those portions of "the pleadings, depositions,
> answers to interrogatories, and admissions on file, together with the
> affidavits, if any," which it believes demonstrate the absence of a
> genuine issue of material fact. . . . [W]e find no express or implied
> requirement in Rule 56 that the moving party support its motion with
> affidavits or other similar materials negating the opponent's claim.

Celotex, 477 U.S. at 323 (emphasis deleted).

As the Court of Appeals explained, "[t]he moving party bears the burden of satisfying Rule

56(c) standards." Martin v. Kelley, 803 F.2d 236, 239, n. 4 (6th Cir. 1986). The moving party's

burden is to show "clearly and convincingly" the absence of any genuine issues of material fact.

Sims v. Memphis Processors, Inc., 926 F.2d 524, 526 (6th Cir. 1991)(quoting Kochins v.

Linden-Alimak, Inc., 799 F.2d 1128, 1133 (6th Cir. 1986)). "So long as the movant has met its initial

burden of 'demonstrat[ing] the absence of a genuine issue of material fact,' the nonmoving party

then 'must set forth specific facts showing that there is a genuine issue for trial.'" Emmons v.

McLaughlin, 874 F.2d 351, 353 (6th Cir. 1989) (quoting Celotex and Rule 56(e)).

Once the moving party meets its initial burden, the Court of Appeals warned that "[t]he

respondent must adduce more than a scintilla of evidence to overcome the motion [and]. . . must

'present affirmative evidence in order to defeat a properly supported motion for summary

judgment.'" Street v. J.C. Bradford & Co., 886 F.2d 1472, 1479 (6th Cir. 1989)(quoting Liberty

Lobby). Moreover, the Court of Appeals explained that

> The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1480 (citations omitted). See also Hutt v. Gibson Fiber Glass Products, 914 F.2d 790, 792 (6th Cir. 1990) ("A court deciding a motion for summary judgment must determine 'whether the evidence presents a sufficient disagreement to require a submission to the jury or whether it is so one-sided that one party must prevail as a matter of law.'")(quoting Liberty Lobby).

If both parties make their respective showings, the Court then determines if the material factual dispute is genuine, applying the governing law.

> More important for present purposes, summary judgment will not lie if the dispute about a material fact is 'genuine' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.
>
> . . .
>
> Progressing to the specific issue in this case, we are convinced that the inquiry involved in a ruling on a motion for summary judgment or for a directed verdict necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits. If the defendant in a run-of-the-mill civil case moves for summary judgment or for a directed verdict based on the lack of proof of a material fact, the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff. The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict – 'whether there is [evidence] upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed.'

Liberty Lobby, 477 U.S. at 248, 252 (citation omitted and emphasis added).

It is likewise true that:

> [I]n ruling on a motion for summary judgment, the court must construe the evidence in its most favorable light in favor of the party opposing the motion and against the movant. Further, the papers supporting the movant are closely scrutinized, whereas the opponent's are indulgently treated. It has been stated that: 'The purpose of the hearing on the motion for such a judgment is not to resolve factual issues. It is to determine whether there is any genuine issue of material fact in dispute. . .'

Bohn Aluminum & Brass Corp. v. Storm King Corp., 303 F.2d 425, 427 (6th Cir. 1962) (citation omitted). As the Court of Appeals stated, "[a]ll facts and inferences to be drawn therefrom must be read in a light most favorable to the party opposing the motion." Duchon v. Cajon Co., 791 F.2d. 43, 46 (6th Cir. 1986).

The Sixth Circuit further explained the District Court's role in evaluating the proof on a summary judgment motion:

> A district court is not required to speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim. Rule 56 contemplates a limited marshalling of evidence by the nonmoving party sufficient to establishing a genuine issue of material fact for trial. This marshalling of evidence, however, does not require the nonmoving party to "designate" facts by citing specific page numbers. Designate means simply "to point out the location of." Webster's Third New InterNational Dictionary (1986).

> Of course, the designated portions of the record must be presented with enough specificity that the district court can readily identify the facts upon which the nonmoving party relies; but that need for specificity must be balanced against a party's need to be fairly apprised of how much specificity the district court requires. This

> notice can be adequately accomplished through a local court rule or
> a pretrial order.

InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989). In this district, the parties must

provide specific references to the proof upon which they rely. See Local Rule 56.01(c) requiring each

party to provide a statement of undisputed facts to which the opposing party must respond.

In Street, the Court of Appeals discussed the trilogy of leading Supreme Court decisions, and

other authorities on summary judgment and synthesized ten rules in the "new era" on summary

judgment motions:

> 1. Complex cases are not necessarily inappropriate for summary judgment.
>
> 2. Cases involving state of mind issues are not necessarily inappropriate for summary judgment.
>
> 3. The movant must meet the initial burden of showing 'the absence of a genuine issue of material fact' as to an essential element of the non-movant's case.
>
> 4. This burden may be met by pointing out to the court that the respondent, having had sufficient opportunity for discovery, has no evidence to support an essential element of his or her case.
>
> 5. A court should apply a federal directed verdict standard in ruling on a motion for summary judgment. The inquiry on a summary judgment motion or a directed verdict motion is the same: 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that the party must prevail as a matter of law.'
>
> 6. As on federal directed verdict motions, the 'scintilla rule' applies, i.e., the respondent must adduce more than a scintilla of evidence to overcome the motion.
>
> 7. The substantive law governing the case will determine what issues of fact are material, and any heightened burden of proof

required by the substantive law for an element of the respondent's case, such as proof by clear and convincing evidence, must be satisfied by the respondent.

8.    The respondent cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'

9.    The trial court no longer has the duty to search the entire record to establish that it is bereft of a genuine issue of material fact.

10.    The trial court has more discretion than in the 'old era' in evaluating the respondent's evidence. The respondent must 'do more than simply show that there is some metaphysical doubt as to the material facts.' Further, '[w]here the record taken as a whole could not lead a rational trier of fact to find' for the respondent, the motion should be granted. The trial court has at least some discretion to determine whether the respondent's claim is 'implausible.'

Street, 886 F.2d at 1479-80 (citations omitted).

The Court has distilled from these collective holdings four issues that are to be addressed upon a motion for summary judgment: (1) has the moving party "clearly and convincingly" established the absence of material facts?; (2) if so, does the plaintiff present sufficient facts to establish all the elements of the asserted claim or defense?; (3) if factual support is presented by the nonmoving party, are those facts sufficiently plausible to support a jury verdict or judgment under the applicable law?; and (4) are there any genuine factual issues with respect to those material facts under the governing law?

A Plaintiff asserting a § 1983 claim "must set forth facts that, when construed favorably, establish (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." Burley v. Gagacki, 729 F.3d 610, 619 (6th Cir. 2013).

11

## 1. Qualified Immunity

Defendants Barnes and George contend that they are entitled to qualified immunity with respect to Plaintiff's First and Fourth Amendment claims because the Sheriff's Department had probable cause, in the form of an arrest warrant, to arrest Plaintiff for disorderly conduct.

Qualified immunity "protects government officials performing discretionary functions unless their conduct violates a clearly established statutory or constitutional right of which a reasonable person in the official's position would have known." Silberstein v. City of Dayton, 440 F.3d 306, 311 (6th Cir. 2006). In Pearson v. Callahan, 555 U.S. 223 (2009), the Supreme Court clarified that the two-prong test for qualified immunity requires Plaintiff to show that: (1) based upon the applicable law, the facts viewed in the light most favorable to the plaintiff show that a constitutional violation has occurred, and (2) the violation involved a clearly established constitutional right of which a reasonable person would have known. See Brown v. Lewis, 779 F.3d 401, 411-12 (6th Cir. 2015) (internal quotations omitted). "The court may address these prongs in any order, and if the plaintiff cannot make both showings, the officer is entitled to qualified immunity." Id. at 412 (citing Pearson, 555 U.S. at 236).

The Fourth Amendment requires that a law enforcement official have probable cause for an arrest. U.S. Const. amend. IV. Similarly, First Amendment retaliation claims, under § 1983, "fail as a matter of law if the defendant had probable cause." Everson, 407 Fed. App'x at 887-88. The probable cause necessary to justify an arrest is defined as "whether at that moment the facts and circumstances within [the officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." Radvansky v. City of Olmsted, 496 F.3d 609, 614-15 (6th Cir. 2007)

(quoting Beck v. Ohio, 379 U.S. 89, 91 (1964)). The probable cause determination is limited to the "totality of the circumstances" known to the officer at the time of arrest, including all facts known to the officer at the time. Gardenhire v. Schubert, 205 F.3d 303, 318 (6th Cir. 2000).

Generally, "an arrest based on a facially valid warrant approved by a magistrate provides a complete defense." Sykes v. Anderson, 625 F.3d 294, 305 (6th Cir. 2010) (citing Voyticky, 412 F.3d at 677). Yet, "if the warrant is so lacking in indicia of probable cause that official belief in the existence of probable cause is unreasonable, qualified immunity is not appropriate." Mills v. City of Barbourville, 389 F.3d 568, 577 (6th Cir. 2006) (citing Malley v. Briggs, 475 U.S. 335, 344-45 (1986)). "Under an 'objective reasonableness' test, the officers will not be immune if, on an objective basis, it is obvious that no reasonably competent officer would have concluded that a warrant should issue; but if officers of reasonable competence could disagree on this issue, immunity should be recognized." Id. (internal quotations omitted).

Here, it is undisputed that Barnes obtained a facially valid arrest warrant. (Docket Entry No. 57, Plaintiff's Response to Defendants' Statement of Undisputed Material Facts at ¶ 32). In addition, Plaintiff does not allege that Defendants made any false statements or material omissions in obtaining the arrest warrant. See Vakilian v. Shaw, 335 F.3d 509, 517 (6th Cir. 2003) (noting that an officer cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant.). Rather, Plaintiff contends that the affidavit submitted by Barnes in support of the application for an arrest warrant was so insufficient on its face that no reasonable officer would have believed in the existence of probable cause.

Under Tennessee law, disorderly conduct is defined as:

(a) A person commits an offense who, in a public place and with intent to cause public annoyance or alarm:

> (1) Engages in fighting or in violent or threatening behavior;

> (2) Refuses to obey an official order to disperse issued to maintain public safety in dangerous proximity to a fire, hazard or other emergency; or

> (3) Creates a hazardous or physically offensive condition by any act that serves no legitimate purpose.

(b) A person also violates this section who makes unreasonable noise that prevents others from carrying on lawful activities.

(c) A violation of this section is a Class C misdemeanor.

Tenn. Code Ann. § 39-17-305 (West 2015).

In his affidavit in support of the application for an arrest warrant, Barnes stated that:

> To wit: Said Defendant did with intent to cause public annoyance or alarm, placed [sic] fixtures in the front yard of 403 Adams Avenue which are inscribed with derrogatory [sic] and foul language which are clearly visible to persons to include children in the residential neighborhood. This did occur in Maury County.

(Docket Entry No. 49-6, Arrest Warrant at 2).

Neither party contends that Plaintiff's conduct falls within T.C.A. § 39-17-305(b), that addresses unreasonable noise. As such, the Barnes affidavit reflects that Plaintiff acted "with the intent to cause public annoyance or alarm," satisfying the initial requirement of T.C.A. § 39-17-305(a). Yet, alone, this conduct is not sufficient to constitute disorderly conduct. Rather, Plaintiff must also engage in one of the three types of conduct enumerated in subsection (1), (2), or (3).

To that end, the Barnes affidavit reflects that Plaintiff "placed fixtures in the front yard of 403 Adams Avenue which are inscribed with derrogatory [sic] and foul language which are clearly

visible to persons to include children in the residential neighborhood." Id. Clearly, Plaintiff's conduct does not fall within subsection (2), as there is not any assertion that she refused to obey an official order. Similarly, Plaintiff's conduct, as described in the Barnes affidavit, cannot be said to fall within subsection (1). Although both parties address the potentially threatening nature of Plaintiff's conduct in the context of her First Amendment claim, there is no language in the Barnes affidavit, itself, reflecting fighting, violence, or threatening behavior.

Instead, Defendants contend that inscribing fixtures with derogatory and foul language creates a physically offensive condition under subsection (3). Yet, "[i]t is well established that 'absent a more particularized and compelling reasons for its actions, [a] State may not, consistently with the First and Fourteenth Amendments, make the simple public display . . . of [a] four-letter expletive a criminal offense.'" Sandul v. Larion, 119 F.3d 1250, 1254 (6th Cir. 1997) (quoting Cohen v. California, 403 U.S. 15, 26 (1971) (holding that convicting a defendant who walked through a courthouse corridor wearing a jacket bearing the words "Fuck the Draft" was unconstitutional under the First and Fourteenth Amendments)); see also State v. Roberts, 106 S.W.3d 658, 663 (Tenn. Ct. App. 2002) ("Mere verbal epithets, unless the epithets can be considered 'fighting words,' cannot by themselves support a conviction under Tennessee's disorderly conduct statute.").

To be sure, "qualified immunity extends to government officials' objectively reasonable mistakes, 'regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" Hensley v. Gassman, 693 F.3d 681, 687 (6th Cir. 2012) (quoting Pearson, 555 U.S. at 231). In addition, probable cause requires only a reasonable ground for belief, "supported by less than prima facie proof but more than mere

suspicion." United States v. McClain, 444 F.3d 556, 562 (6th Cir. 2005). Yet, viewing the facts in a light most favorable to Plaintiff, the Court concludes that the Barnes affidavit is so lacking in indicia of probable cause that official belief in the existence of probable cause is unreasonable.

Accordingly, the Court concludes that Defendants Barnes and George are not entitled to qualified immunity on the basis of the arrest warrant with respect to Plaintiff's First and Fourth Amendment claims.

### 2. Plaintiff's Fourth Amendment Claims

The Fourth Amendment requires that a law enforcement official have probable cause for an arrest. U.S. Const. amend. IV. Thus, in order to prevail on a false arrest claim under § 1983, Plaintiff must "prove that the arresting officer lacked probable cause to arrest the plaintiff." Voyticky v. Village of Timberlake, Ohio, 412 F.3d 669, 677 (6th Cir. 2005).

Here, Defendants Barnes and George contend that they are entitled to summary judgment in their individual capacities on Plaintiff's Fourth Amendment claims because the Sheriff's Department had probable cause in the form of an arrest warrant, to arrest Plaintiff for disorderly conduct. Thus, for the reasons discussed supra, the Court concludes that the Barnes affidavit is so lacking in indicia of probable cause that official belief in th existence of probable cause is unreasonable.

Yet, Plaintiff seeks to hold Defendant George liable, individually, because "by giving his presumptive blessing to all that went on, Sheriff George may as well have effected the plaintiff's arrest, himself . . ." (Docket Entry No. 56, Plaintiff's Memorandum in Support of her Response to Defendants' Motion for Summary Judgment at 19). The Court interprets Plaintiff's claims against George, individually, as arising under a theory of supervisory liability.

"Supervisory liability cannot be imposed in a Section 1983 action based on the theory of

respondeat superior without proof of personal involvement." Dillingham v. Millsaps, 809 F. Supp.2d 820, 844 (E.D. Tenn. 2011) (citing Taylor v. Mich. Dep't of Corr., 69 F.3d 76-80-81 (6th Cir. 1995)). "Supervisory liability under § 1983 does not attach when it is premised on a mere failure to act; it 'must be based on active unconstitutional behavior.'" Greene v. Barber, 310 F.3d 889, 899 (6th Cir. 2002) (quoting Leach v. Shelby County Sheriff, 891 F.2d 1241, 1246 (6th Cir. 1989)). Thus, Plaintiff must establish that "the supervisor 'either encouraged the specific incident or misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers.'" Everson v. Leis, 556 F.3d 484, 495 (6th Cir. 2009) (quoting Hays v. Jefferson Cnty., 668 F.2d 869, 874 (6th Cir. 1982)).

Here, Plaintiff alleges that George was present at the scene of the plaintiff's arrest, discussed obtaining an arrest warrant with the officers on the scene, and "stood by approvingly during the arrest, itself." (Docket Entry No. 56, Plaintiff's Memorandum in Support of her Response to Defendants' Motion for Summary Judgment at 18). Yet, a review of the deposition testimony cited by Plaintiff in support of these claims against George reflects that George was not actively involved in the alleged conduct:

> Q: What did y'all decide to do then?
>
> A: I just stood by and let my officer take care of the business. He handles this type of stuff all the time.
>
> Q: Which officer?
>
> A: Sam Barnes.
>
> Q: Okay. Handles this kind of stuff all the time?

A:   Well, whatever - - he's the sergeant on the shift, and he's the guy that takes care of the situations that come to him.

Q:   Okay. Did you not have any input or direction in that?

A:   I didn't have any - - I didn't tell him what to do.

(Docket Entry No. 56-2, Deposition of Enoch George at 7).

Thus, the Court concludes that Plaintiff has not presented any evidence to establish that Defendant George actively engaged in the alleged violation of Plaintiff's Fourth Amendment rights. Accordingly, Defendants' motion for summary judgment should be denied with respect to Plaintiff's Fourth Amendment claims against Barnes, in his individual capacity, but granted with respect to Plaintiff's Fourth Amendment claims against George in his individual capacity.

### 3. Plaintiff's First Amendment Claims

The First Amendment "prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." Everson v. Calhoun County, 407 Fed. App'x 885, 887 (6th Cir. 2011) (quoting Hartman v. Moore, 547 U.S. 250, 256 (2006)). Thus, to state a prima facie First Amendment retaliation claim, Plaintiff "must establish (1) that she engaged in protected speech; (2) injury as a result of defendant's actions; and (3) causation." Id. (quoting Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 275, 287 (1977)).

First, Defendants contend that Barnes and George are entitled to summary judgment in their individual capacities on the basis of qualified immunity because the Sheriff's Department had probable cause, in the form of an arrest warrant, to arrest Plaintiff for disorderly conduct. Yet, for the reasons discussed supra, the Court concludes that the Barnes affidavit is so lacking in indicia of probable cause that official belief in the existence of probable cause is unreasonable and Barnes and

18

George are, therefore, not entitled to qualified immunity on Plaintiff's First Amendment claims based solely on the existence of the warrant.

Second, Defendants contend that, regardless of the qualified immunity determination, Barnes and George are entitled to summary judgment because Plaintiff's speech is not protected under the First Amendment.

It is well established that speech that is merely "vulgar or offensive is protected." United States v. Landham, 251 F.3d 1072, 1080-81 (6th Cir. 2001). Moreover, "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." Greene v. Barber, 310 F.3d 889, 896 (6th Cir. 2002) (quoting City of Houston, Tex. v. Hill, 482 U.S. 451, 461 (1987)). Yet, "'true threats,' unlike political hyperbole and other protected speech, are not protected by the First Amendment." Id. at 1080 (citing Watts v. United States, 394 U.S. 705, 708 (1969)). "'True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." Virginia v. Black, 538 U.S. 343, 359 (2003). Importantly, threatening statements directed at specific individuals can be protected depending on the context in which it is spoken. See Watts, 394 U.S. at 706-08 (holding that protestor's statement that "[i]f they ever make me carry a rifle the first man I want to get in my sights is L.B.J." was protected).

The Court notes that both parties cite to cases that articulate an objective standard for determining whether speech constitutes a "true threat" and is, thus, excluded from protection under the First Amendment. See United States v. Jeffries, 692 F.3d 473, 480 (6th Cir. 2012) ("What is excluded from First Amendment protection – threats rooted in their effect on the listener – works well with a test that focuses not on the intent of the speaker but on the effect on a reasonable listener

of the speech."); United States v. Alkhabaz, 104 F.3d 1492, 1496 (6th Cir. 1997) ("It is important to note that we are not expressing a subjective standard.").

Both Jeffries and Alkhabaz analyze the requirements of the First Amendment in the context of 18 U.S.C. § 875(c), a statute that prohibits any interstate communication that contains any threat to injure the person of another. Recently, however, the Supreme Court was presented with the opportunity to clarify whether the First Amendment requires a subjective intent to threaten an individual before the government can impose criminal penalties for a threat. See Elonis v. United States, 135 S.Ct. 2001, 2004 (2015). Although the Court did adopt a subjective standard for analyzing true threats under § 875(c), thereby abrogating Jeffries and Alkhabaz, the Court declined to address the constitutional question. Id. at 2012 ("[g]iven our disposition, it is not necessary to consider any First Amendment issues.").

Here, it is not necessary to choose between an objective and subjective standard because the Court concludes that Plaintiff's speech is protected under either standard. Viewing Plaintiff's speech in light of its full context, the Court concludes that a reasonable person would not foresee that the statement on the toilet would be interpreted by those to whom Plaintiff communicated as a serious expression of an intent to harm or assault. See Black, 538 U.S. at 360 ("a prohibition on true threats protect[s] individuals from the fear of violence and from the disruption that fear engenders, in addition to protecting people from the possibility that the threatened violence will occur."(internal quotations omitted)). It makes no difference that the speech, taken literally, may have communicated a threat. See Watts, 394 U.S. at 708. Ultimately, Plaintiff's speech amounts to a vulgar and, perhaps, offensive statement written on a toilet displayed in the front yard of a residence. Viewed in its full context, no reasonable person would have expected viewers to interpret the message as a true threat

of serious harm.

Similarly, under the subjective standard, the Court concludes that Plaintiff did not intend her statements to threaten serious harm to anyone. Plaintiff testified that she decided to write the message depicted on the toilet because she was upset and angry about the damage that had been done to her home during the arrest of her daughter and she was upset about how she had been treated when she contacted the Sheriff's Department. (Docket Entry No. 57, Plaintiff's Response to Defendants' Statement of Undisputed Material Facts at ¶¶ 7-8). Plaintiff further testified that, when she wrote "FUCK you Rob Wagonschutz," she intended to convey her dissatisfaction with what Wagonschutz and the Drug Task Force had done to her and her home. Id. at ¶ 9. Similarly, Plaintiff testified that, when she wrote "Special place in HELL for U and Ur Boys," she meant that there is a special place in hell for individuals who "break into someone's home and leave it a mess and won't answer for what they've done." Id. at ¶ 10. Plaintiff testified that she directed the message specifically at Wagonschutz because he was the arresting officer and because he was the officer with whom Plaintiff spoke on the phone. Id. at ¶ 11. Thus, applying the subjective standard, the Court concludes that Plaintiff did not intend her statements to threaten serious harm to anyone, including Deputy Wagonschutz, his family, or the Drug Task Force.

The Court, therefore, concludes that Plaintiff's statements do not constitute a true threat and are, thus, protected by the First Amendment. Yet, for the reasons discussed supra, the Court concludes that Plaintiff has not presented any evidence to establish that Defendant George was actively involved in the alleged violation of Plaintiff's First Amendment rights. Accordingly, Defendants' motion for summary judgment should be denied as to Plaintiff's First Amendment claims against Barnes, in his individual capacity, but granted as to Plaintiff's First Amendment

21

claims against George, in his individual capacity.

### 4. Plaintiff's Claims Against Maury County

"[M]unicipalities and other local government units are included among those persons to whom § 1983 applies." Feliciano v. City of Cleveland, 988 F.2d 649, 654 (6th Cir. 1993) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 690 (1978)) (internal quotations omitted). Yet, "a local government is liable as an entity only when the government itself has committed the constitutional violation, not when the violation was committed by its employees." Id. (citing Pembaur v. City of Cincinnati, 475 U.S. 469, 478-79 (1985)). Thus, "a municipality cannot be held liable under § 1983 on a respondeat superior theory." Monell, 436 U.S. at 691. Rather, a municipality may be held liable under § 1983 only where its policy or custom causes the constitutional violation in question. See Monell, 436 U.S. at 694.

A plaintiff can make a showing of an illegal official policy or custom by demonstrating that an official with final decision making authority ratified illegal actions. See Thomas v. City of Chattanooga, 398 F.3d 426, 429 (6th Cir. 2005). Yet, "mere authority to exercise discretion while performing particular functions does not make a municipal employee a final policymaker unless the official's decisions are final and unreviewable and are not constrained by the official policies of superior officials." Feliciano, 988 F.2d at 655. "[C]onsideration should . . . be given to whether the employee . . . formulates plans for the implementation of broad goals." Hager v. Pike County Bd. of Educ., 286 F.3d 366, 376 (6th Cir. 2002) (quoting Faughender v. City of N. Olmsted, Ohio, 927 F.2d 909, 914 (6th Cir. 1991)). Thus, "[t]he fact that a particular official – even a policymaking official – has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion." Pembauer, 475 U.S. at 481-82.

Here, Plaintiff testified that she does not know what policies Sheriff George has adopted and that she does not have any evidence to support her claim that Sheriff George adopted a policy of retaliation against protected speech. See Docket Entry No. 49-2, Deposition of Patti Cole at 115-16.[3] Instead, Plaintiff contends that "[a]s the County's policymaker in the area of law enforcement, on the scene, monitoring it, and giving his presumptive blessing to all that went on, Sheriff George may as well have effected the plaintiff's arrest, himself, for her 'annoying' and 'alarming' manner of criticizing his employee." (Docket Entry No. 56, Plaintiff's Memorandum in Support of her Response in Opposition to Defendants' Motion for Summary Judgment at 19).

Plaintiff also alleges that Maury County failed to adequately train and supervise Barnes. "A systemic failure to train police officers adequately is a custom or policy which can lead to municipal liability." Miller v. Sanilac County, 606 F.3d 240, 255 (6th Cir. 2010) (citing Gregory v. City of Louisville, 444 F.3d 725, 753 (6th Cir. 2006)). Yet, "[t]he inadequacy of police training serves as a basis for § 1983 liability where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Id. (internal quotations omitted). "To establish

---

[3]Plaintiff has submitted an affidavit (Docket Entry No. 56-3) that further explains her deposition testimony. Yet, "a party cannot create a disputed issue of material fact by filing an affidavit that contradicts the party's earlier deposition testimony." Aerel, S.R.L. v. PCC Airfoils, L.L.C., 448 F.3d 899, 906 (6th Cir. 2006). Here, Plaintiff was directly questioned during her deposition about her claims against Sheriff George and Maury County alleging a policy or custom resulting in constitutional violations. See Docket Entry No. 49-2, Deposition of Patti Cole at 115-16. Plaintiff testified that she did not know what policies Sheriff George adopted and she did not know anything about Defendant Barnes' training. Id. In her subsequent affidavit, Plaintiff now testifies that "all of the wrongs that happened to me must have flowed from policies of Sheriff George," and "What I do know about [Barnes'] training, indirectly, is that it didn't equip him to recognize and avoid violation of my First Amendment right to freedom of speech." (Docket Entry No. 56-3). The Court concludes that Plaintiff's affidavit contradicts her prior deposition testimony and cannot serve to create a disputed issue of material fact. Accordingly, the Court will not consider the affidavit in deciding the pending motion for summary judgment.

deliberate indifference, the plaintiff 'must show prior instances of unconstitutional conduct demonstrating that the County has ignored a history of abuse and was clearly on notice that the training in this particular area was deficient and likely to cause injury.'" Id. (quoting Fisher v. Harden, 398 F.3d 837, 849 (6th Cir. 2005)).

Here, however, Plaintiff again testified that she does not know anything about Barnes' training. See Docket Entry No. 49-2, Deposition of Patti Cole at 116. Moreover, Plaintiff does not present any evidence to establish prior instances of unconstitutional conduct demonstrating a history of abuse.

Without more, the Court concludes that Plaintiff has not submitted sufficient evidence to create a genuine issue of material fact with respect to her claims that Maury County maintained a policy or custom that resulted in the violation of Plaintiff's constitutional rights or that Maury County failed to adequately train or supervise Barnes. Accordingly, Defendants' motion should be granted with respect to Plaintiff's claims against Maury County.

### 5. Plaintiff's Claims Against Sheriff George in his Official Capacity

"A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity." Matthews v. Jones, 35 F.3d 1046, 1049 (citing Will v. Michigan Dep't of State Police, 491 U.S. 58, 68 (1989)). For the reasons discussed supra, Defendants' motion for summary judgment should be granted with respect to Plaintiff's claims against Maury County. Accordingly, Defendants' motion for summary judgment should also be granted with respect to Plaintiff's claims against Sheriff George in his official capacity.

### 6. Plaintiff's Claims Against the Maury County Board of Education

In her response in opposition to Defendants' motion for summary judgment, Plaintiff

concedes that Maury County is a legal entity distinct from the Maury County Board of Education and, therefore, cannot be held liable for the policies or customs of the Maury County Board of Education. See Docket Entry No. 55, Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment at 2.

As such, Defendants' motion for summary judgment should be granted to the extent Plaintiff seeks to hold Maury County liable for the alleged policies or customs of the Maury County Board of Education.

## C. Conclusion

Accordingly, the Court concludes that Defendants' motion for summary judgment (Docket Entry No. 48) should be granted with respect to Plaintiff's claims against Maury County and Enoch George, individually and in his official capacity, and denied with respect to Plaintiff's First and Fourth Amendment claims against Samuel Barnes in his individual capacity.

An appropriate Order is filed herewith.

**ENTERED** this the _3rd_ day of September, 2015.

WILLIAM J. HAYNES, JR.,
Senior United States District Judge